# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAL WAGNER STUDIOS, INC., ) <br> d/b/a WAGNER PORTRAIT GROUP, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> KRIS ELLIOTT, PAM ELLIOTT, ) <br> BRAD GUTIERREZ, ) <br> CINDY HARGRAVE, ROBERT BRAY, ) <br> PHIL WALKER, and ) <br> SHARON VANSAGHI, ) <br> ) <br> Defendants. ) | Case No. 09-CV-0031-MJR |

## ORDER ISSUING TEMPORARY RESTRAINING ORDER

**REAGAN, District Judge:**

### A. Background

On January 9, 2009, Plaintiff Hal Wagner Studios (hereinafter "Wagner") filed this action against Defendants alleging ten counts (Doc. 2), including: (1) a claim for injunctive relief to enforce the non-compete agreement against Kris Elliott, (2) breach of contract claim against Kris Elliott, (3) a claim under the Computer Fraud and Abuse Act against Kris Elliott, Pam Elliott, and Brad Guitierrez, (4) a claim for replevin against all Defendants, (5) a claim for conversion against all Defendants, (6) a breach of the duty of loyalty claim against all Defendants, (7) a breach of fiduciary duty claim against Kris and Pam Elliott, (8) a tortious interference with business and contractual relationships/expectancy claim against Kris and Pam Elliott, (9) a civil conspiracy claim against all Defendants, and (10) a claim for unfair competition against all Defendants. Along with its verified complaint, Wagner filed a motion for a temporary restraining order (Doc. 5). Defendants

-1-

Kris and Pam Elliott submitted a response on January 13, 2009 (Doc. 22).

The verified complaint includes the following allegations. Wagner is in the business of supplying photography services to local schools for the purpose of composing yearbooks. Wagner claims that on March 1, 1994, Kris Elliott entered into an employment agreement with Wagner (Doc. 5, Exh. A). That agreement contains a covenant not to compete, which provides that Elliott cannot

> directly or indirectly, (for or on behalf of himself or any other person or entity) for a period of 18 months for the date of termination of this Agreement:
> A. Solicit or sell school photography accounts which were accounts in the Elliott Territory or were accounts produced by Elliott during the term of this Agreement;
> B. Disclose the list of the above-described school photography accounts or any part thereof, to anyone without the prior written consent of Employer;
> C. Otherwise engage in competition in any respect, with Employer for any of the above-described school photography accounts.

(Doc. 5, Exh. A, ¶ 5). The Elliott Territory includes the Illinois counties of Adams, Calhoun, Macoupin, Madison, Morgan, Pike, and St. Clair, excluding 21 specifically identified schools. The territory also includes 16 specifically identified schools in Missouri (Doc. 2, Exh. A, Schedules 2 & 3).

Kris Elliot served as the General Manager of Wagner's business in Central and Southern Illinois from an office in Edwardsville, IL. Pam Elliott, Kris's wife, was employed as the office manager. All other Defendants worked in various capacities under their direction.

On December 31, 2008, all Defendants unexpectedly submitted letters of resignation, effective on January 1, 2009, leaving only two employees in the Edwardsville office. Since Defendants' resignations, Wagner claims that the each took jobs with Wagner's major competitor,

Herff Jones.[1] For reasons explained below, Wagner alleges that the Defendants are attempting to take Wagner's work product and use it to move clients to Herff Jones immediately.

Upon receipt of the resignations, Wagner's vice-president inspected the Edwardsville office and determined that a large number of business documents were missing. These include customer lists, pending contracts, photography schedules, 110 production orders, notebooks containing notes about customer needs, and entire customer files. Additionally, photographic images from each school serviced by the Edwardsville office during the 2006-2007 and 2007-2008 school years are no longer accessible on Wagner's computer server and appear to have been recently deleted. Wagner is also unable to locate any physical CDs containing these images, nor can they find copies of images from 2008-2009. In addition, seven senior wall composites printed by Wagner and the framing supplies purchased for them are missing. Wagner also learned that Defendant Gutierrez created and operated a separate email account from which to communicate with clients, but never disclosed the password to Wagner. Other documents and items were determined as missing, and Wagner lists them in detail throughout the complaint. Wagner claims that these physical and electronic files and items are critical to its business, both presently and in the future.

Actions taken by the Elliotts on their final days of employment further raised Wagner's suspicions that they and the other employees who abruptly resigned are responsible for taking these items. Wagner analyzed its Printer Job Log from its corporate headquarters in St. Louis, Missouri and determined that Pam Elliott (as user "pelliott") spent December 30, 2008 printing 110 production orders (Doc. 2, Exh. J). Wagner has not been able to gain access to any of

---

[1] In Kris and Pam Elliott's response to the motion for temporary restraining order (Doc. 22), however, they indicate that only the Elliotts and Sharon Vansaghi have taken positions with Herff Jones.

these production orders.

Pam Elliott and other defendants also printed a variety of other business documents between December 9 and December 31 which are no longer accessible from the computers in the Edwardsville office. Wagner further claims that it hired a company specializing in electronic data retrieval and is still unable to view any of these documents, including the approximately 200,000 portraits from the 2006-2007 and 2007-2008 school years that are missing from Wagner's server.

After being contacted by various schools, Wagner also learned that prior to their resignation, Kris and Pam Elliott sent "Publisher CDs" to certain schools. These CDs contain all of the photographs taken by Wagner at those schools, which Wagner would typically use to publish yearbooks. The delivery of these images is contrary to Wagner's business practice, as the photography work is typically stored by Wagner until yearbook production is completed.

For instance, Greenfield Elementary received a CD accompanied by a letter informing it that the CDs would be used to print their yearbook. The letter was dated December 30, 2008 (the day before Defendants resigned), and the identified sender was "Wagner Portrait Group," though the format does not use Wagner's official letterhead (Doc. 2, Exhs. K & L). On January 2, 2009, Defendants Kris and Pam Elliott sent a solicitation letter to Greenfield Elementary on Herff Jones letterhead (Doc. 2, Exh. M). The letter announces the Defendants' change in employment and solicits the school's business. Wagner also alleges that on January 8, 2009, one of the Defendants contacted the school and stated that they were coming to pick up the "Publisher CD" so as to begin work on the yearbook (presumably converting the client into a Herff Jones customer). The Elliotts admit that they did in fact send such CDs to various schools, but claim that they were under the

impression that the photographs on the CDs belonged to the schools (Doc. 22, Exhs. A & B).[2]

Wagner seeks an injunction ordering Kris Elliot and anyone acting in concert with him from soliciting Wagner accounts in the Elliott territory or engaging in competition with Wagner. Additionally, Wagner seeks the return of all missing documents and items.[3] Wagner also wants the Court to require Brad Gutierrez to provide the password to an alternate email account, to which Wagner believes he diverted customer correspondence. Wagner also asks that the Elliotts be required to send letters to all schools that received "Publisher CDs," explain that these CDs are the property of Wagner, and require that all such CDs be returned to Wagner.

The Court set a hearing on the motion for TRO for 2:00 p.m. on January 13, 2009 (Doc. 13). Counsel for Kris and Pam Elliott appeared. Additionally, Wagner's counsel represented to the Court that all other Defendants, except for Robert Bray, were given notice of the motion for TRO and hearing. Upon considering the parties arguments, the Court issued a "preliminary temporary restraining order," (Doc. 27) but informed the parties that it would be vacated in favor of a detailed Order.

Accordingly, the Court now **GRANTS IN PART AND DENIES IN PART** the motion for temporary restraining order (Doc. 5) pursuant to the terms and conditions provided below.

---

[2] Harold Wagner III's affidavit further indicates that he has learned from numerous schools that the Elliotts have solicited the transfer of the schools' business to Herff Jones (Doc. 4). He also was able to obtain copies of certain missing contracts, even though Defendants claim that no such contracts ever existed. Finally, he has learned that Wagner's bids for certain projects are due in the near future.

[3] With respect to the seven senior composites, the Elliotts claim that all but one have been delivered to the proper school. However, neither counsel could provide anything to confirm this statement.

## B. ANALYSIS

### 1. The Issuance of an Ex Parte TRO as to Defendant Bray

Wagner has given notice to all Defendants except Robert Bray. Therefore, any TRO with respect to Bray would be ex parte. **FEDERAL RULE OF CIVIL PROCEDURE 65(b)** authorizes the issuance of a temporary restraining order (TRO) only under limited circumstances.

> The "stringent restrictions" imposed "on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute. Ex parte temporary restraining orders are no doubt necessary in certain circumstances, . . . but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." Ex parte temporary restraining orders are most familiar to courts where notice to the adversary party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.

*American Can Co. v. Mansukhani*, 742 F.2d 314, 321–22 (7th Cir. 1984) (quoting *Granny Goose Foods*, 415 U.S. 423, 438–39 (1974)).

Indeed, Rule 65(b)(1) permits a federal court to grant a TRO without notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Wagner has failed to fulfill the requirements described in Rule 65(b)(1)(A)–(B) with respect to Bray. Indeed, the fact that notice was given to all Defendants but Bray indicates that there is not a reasonable basis upon which the Court could find that notice should not be required. Accordingly,

the Court declines to issue an ex parte TRO with respect to Defendant Bray.

**2. The Issuance of a TRO as to All Other Defendants**

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. ***See, e.g., Charter Nat'l Bank and Trust v. Charter One Financial, Inc.*, 2001 WL 527404 (N.D. Ill. May 15, 2001) (unreported).** The movant must make an initial showing that (1) its case has a likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm if injunctive relief is not granted. ***See, e.g., Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1054-55 (7th Cir. 2004).** If the movant meets the burden on these three requirements, then the Court considers two additional criteria: (4) whether the balance of harm to the plaintiff if the TRO is wrongly denied outweighs the harm to the defendant if the TRO is wrongly granted, and (5) the public interest. ***Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).**

The Court is faced with two generic issues here. The first issue is whether a TRO should be issued to temporarily enjoin Kris Elliott, and anyone acting in concert with him, from competing against Wagner with respect to those schools and counties identified in the covenant not to compete. The second issue is whether the Court should require Defendants to return the items and documents that Wagner claims are missing from its Edwardsville office.

**a. The Covenant Not To Compete**

With respect to the covenant not to compete, the Court declines to issue a TRO at this time because the validity of that provision is unclear. As a federal court exercising diversity jurisdiction, this Court applies federal law in resolving procedural and evidentiary issues, and Illinois law with respect to substantive law. ***Bevolo v. Carter*, 447 F.3d 979, 982 (7th Cir. 2006)**

**(citing *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir. 1994)).** As such, the Court applies Illinois's choice-of-law rules to determine the applicable substantive law. *See Hinc v. Lime-O-Sol Company*, **382 F.3d 716, 719 (7th Cir. 2004);** *Kohler v. Leslie Hindman, Inc.*, **80 F.3d 1181, 1184 (7th Cir. 1996)**. Illinois follows the **RESTATEMENT (SECOND) OF CONFLICT OF LAWS** in making such decisions. *Midwest Grain Products of Illinois, Inc. v. Productization, Inc.*, **228 F.3d 784, 787 (7th Cir. 2000)**.

For contracts claims, the Restatement and Illinois law respects a contract's choice-of-law clause as long as the contract is valid. *Kohler*, **80 F.3d at 1185.** In this case, the parties' contract includes a choice-of-law provision that "[t]his Agreement shall be construed and enforceable under the Laws of the State of Missouri" (Doc. 2, Exh. A, ¶ 7). Accordingly, with respect to the contract claim, the Court applies Missouri law.

The threshold for showing that the movants have a likelihood of success on the merits is low, and Plaintiffs "need only demonstrate a better than negligible chance of succeeding." *Cooper*, **196 F.3d at 813.** Missouri law does not favor covenants not to compete, because they restrain trade. *Systematic Business Servs., Inc. v. Bratten*, **162 S.W.3d 41, 49–50 (Mo. App. Ct. 2005).** However, the Court may uphold such agreements if the party seeking its enforcement establishes "both the necessity to protect the claimant's legitimate interests and that the agreement is reasonable as to time and space." *Systematic Business Servs., Inc. v. Bratten*, **162 S.W.3d 41, 50 (Mo. App. Ct. 2005).** A business's "'stock of customers' and the company's goodwill" are considered to be legitimate interests. *Id.* **at 49.**

Kris Elliott argues that the covenant not to compete is no longer enforceable because Wagner breached the contract by refusing the pay certain commissions in recent years. Wagner

admits that commissions have not been paid, but claims that this is because it agreed with Elliott to simply pay a higher salary in lieu of commissions. But Wagner provides no further documentation of this agreement, and the March 1994 contract states that it cannot be amended or modified except by a signed writing.

The admission of Wagner with respect to the modification casts some doubt on the contract's continuing enforceability. It is not clear whether this later agreement with respect to commissions was a proper modification, an entirely new agreement, or something else. Due to the lack of clarity surrounding this issue, the Court declines to enjoin Kris Elliott from soliciting clients falling within the covenant not to compete at this juncture. Instead, the parties will be given an opportunity to fully explore this issue prior to the preliminary injunction hearing. This permits the parties ample time to fully brief all relevant facts and applicable law, as well as to present any evidence they may have at the hearing. As a result, the Court need not examine the question of whether the covenant not to compete is reasonable as to purpose, time, and duration.

However, the Court does caution Kris Elliott that should he or anyone acting on his behalf proceed with any such solicitations in the interim, Elliott is at risk of breaching the covenant not to compete in the event that the Court eventually finds it enforceable. As a result, Kris Elliott and his agents act at their own peril with regard to any solicitation of the schools included in the covenant not to compete.[4] If Defendants do undertake such solicitations, they may not use any documents or other property owned, or claimed to be owned, by Wagner in the process.

Accordingly, the Court **DENIES** Wagner's motion to temporarily enjoin Kris Elliott

---

[4] To be clear, the Court states no opinion as to the enforceability of the covenant not to compete at this time.

from soliciting clients who might be governed by the covenant not to compete.

### b. Missing Documents and Items

Wagner also seeks the return of its documents and office items. Wagner argues that it has a likelihood of success on its tort claims, and specifically, its claim that Elliott breached his fiduciary duties. As noted above, this Court applies Illinois's choice-of-law rules to determine the applicable substantive law. In determining which state's law applies to Wagner's tort claims, the Court "select[s] the law of the jurisdiction that has the 'most significant relationship' to the events out of which the suit arose, and to the parties." ***Carris v. Marriott International Inc.*, 466 F.3d 558, 560 (7th Cir. 2006) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)).** The law of the place where the injury occurred is presumed to apply unless another state has a more significant relationship to the occurrence or parties. ***Id.*; *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844 (7th Cir. 1999).** Here, the injury occurred in Illinois, as Edwardsville, Illinois is the site of the Defendants' sudden resignations, and is the location from which the documents and property were allegedly taken. Accordingly, the Court applies Illinois law to Wagner's tort claims.

Wagner claims that fiduciary duties arise out of Kris Elliott's position as a general manager of the Edwardsville office and Pam Elliott's position as office manager. Indeed, it is clear from the complaint that Kris Elliott managed all of Wagner's clients throughout Central and Southern Illinois and had substantial discretion in how to conduct business with each of them. Additionally, Pam Elliott was the office manager who primarily assisted Kris Elliott in his duties, including contacting clients and scheduling photography services. "[A]gents owe fiduciary duties of loyalty to their principals not to (1) actively exploit their positions within the corporation for their own personal benefits; or (2) hinder the ability of the corporation to conduct the business for which

it was developed." ***FoodComm Intern. v. Barry***, **328 F.3d 300, 303 (7th Cir. 2003) (applying Illinois law).**

The allegations in the complaint, coupled with the affidavits and exhibits provided by Wagner, indicate that Wagner has a "better than negligible chance of succeeding " on this claim. ***Cooper***, **196 F.3d at 813.** According to Wagner, nearly all of the critical documents, photographs, and client files needed to perform outstanding contracts are missing. This also includes all of the purchase orders that were printed from Pam Elliott's computer on December 30, 2008, which were inaccessible in either electronic of hard copy after the Elliotts' resignations. The missing documents and files, accompanied by Pam and Kris Elliotts' apparent printing of documents on their last days of employment, is sufficient for a finding that Wagner's breach of fiduciary duty claim has a likelihood of success on the merits.

Next, the Court considers whether Wagner has shown that it lacks an adequate remedy at law and will suffer irreparable harm if a TRO is not issued. Wagner has no adequate remedy at law because Defendants' conduct has deprived Wagner of various works in progress, which Wagner's clients expect to be completed in the coming weeks and months. Failure to return these immediately will likely result in Wagner's inability to perform outstanding agreements. Such a failure will damage Wagner's position in the marketplace far into the future. Monetary damages would be insufficient, as it would be almost impossible to calculate the extent of this harm. And the anticipated harm is irreparable, because client relationships may never be mended if Wagner is unable to carry out its contractual duties.

Next, the Court must consider the balance of the equities. In doing so, the Court asks whether the threatened injury to the movant outweighs the potential harm to the Defendants if the

TRO is wrongfully granted. Here, it is clear that the balance of the equities tips in favor of Wagner. If the TRO is wrongfully denied, Wagner will be unable to fulfill its contractual agreements due to the missing work product. Additionally, Wagner's relationships with longtime clients may be forever damaged. Conversely, if the TRO is wrongfully denied, Defendants will be in the same position they are in now—searching for clients for its new business. All of the work product at issue apparently belongs to Wagner or else to schools that have contracts with Wagner. As far as the Court can tell, Defendants will only suffer the inconvenience of returning items they removed from Wagner's premises upon their departure. A TRO will merely preserve the status quo until a full hearing on the merits can be conducted.

Finally, the public's interest clearly favors granting the TRO. In particular, Wagner's clients have an expectation that yearbook services will be performed and completed. Elliott's retention of Wagner materials makes it impossible for Wagner to complete such tasks, and makes it difficult for the clients to know who the proper contact for the remainder of the year actually is. The expeditious completion of Wagner's agreements with the many school districts it services takes priority over the Defendants' quest for new business ventures.

### 3. The Bond Requirement

**FEDERAL RULE OF CIVIL PROCEDURE 65(c)** provides:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The literal reading of Rule 65(c) provides that security is mandatory, and the Seventh Circuit has generally required that security be given. ***See Minnesota Power & Light Co. v. Hockett*, 14 Fed.Appx. 703, 707 (7th Cir. 2001) ("Posting such a security . . . is the cost of doing business**

in federal court."); *Cronin v. U.S. Dep't of Agriculture*, 919 F.2d 439, 445 (7th Cir. 1990) (explaining that Rule 65(c) "makes such security mandatory, although a number of environmental decisions . . . waive the requirement or allowing the posting of a nominal bond.").

Having considered the parties' arguments on this issue, the Court requires Wagner to post security in the amount of $500.

**4. Scope of the TRO**

As already noted, the TRO will not be granted as to Robert Bray, as he was not given notice of the hearing. Additionally, at this time the Court will not temporarily enforce the covenant not to compete in Kris Elliott's March 1994 contract.

Finally, Wagner requests that Defendants submit letters to every school that received Production CDs telling them to return the CDs to Wagner pursuant to this Court's Order. This improperly puts the onus on the schools, which are not parties to this lawsuit. As a result, the Court will not require Defendants to send any such letters at this time, but will require Defendants to return any of Wagner's Production CDs currently in their possession, and any they receive from schools in the future. If Wagner feels that this is insufficient, they may present any further basis to warrant such a letter for the Court's consideration at the preliminary injunction hearing.

The terms of the TRO are included below.

### C. Terms of the TRO

Having fully considered the parties' allegations, pleadings, and arguments, and based upon the foregoing findings, the Court **ORDERS** as follows:

(1) A temporary restraining order is issued immediately. Wagner shall post security in the amount of **$500.** The Court notes that Wagner has already posted the required security (Doc. 31).

(2) Defendants Kris Elliott, and anyone acting in active concert or participation with Kris Elliott, specifically including, but not limited to, Defendants Pam Elliott, Brad Gutierrez, Cindy Hargrave, Phil Walker, and Sharon Vansaghi, are compelled to return any and all property of Wagner within their possession, control, or access, specifically including but not limited to:

> A) All customer school contracts, specifically including "Photography Agreements" and "Confirmation of Date" documents;
>
> B) All proposals that have been submitted to schools by any of the Defendants;
>
> C) The compilation of customer information on school clients of Wagner, referred to as "The Bible" for conducting business operations with customers of Wagner at Wagner's Edwardsville, Illinois office;
>
> D) The Wagner Portrait Group Photography Schedule
>
> E) The Wagner Photography schedule, which includes notes on school contracts and accounts, which was maintained in a Franklin Planner;
>
> F) All customer school files of any manner;
>
> G) Camera Cards for the Fall 2008 business season;
>
> H) All discs prepared by Defendants, including those identified as "Publication CDs";
>
> I) All Senior Wall Composites for Wagner school accounts;
>
> J) All electronically stored information, including, but not limited to, the following files:

1. Fall Dates Enrollment 2008.xls
2. Spread Sheet Clients.xlsx
3. All Schools Labels.doc
4. Commission Fall 2007.doc
5. Package Info.xlsx
6. End of Xmas Schools.xlsx
7. HJ Yearbook Count 07-08.xls
8. HJ Yearbook Schedule 07-08.xls
9. Envelope Order Form.doc
10. Yearbooks Cover Letter.doc
11. Cover Choice Order Form.doc
12. Yearbook Publishing Agreement.doc
13. 2008-2009 Deadlines.doc
14. Spread Sheet Clients.xls (4 copies printed);
15. Marion-Sharon.xls; and
16. Picture DatesRetake Dates Fall 2008.xls

K) All human resource/personnel files relating to the employees at Wagner's Edwardsville and/or Marion office;

L) All legal pads and notebooks containing handwritten notes and information on school accounts of Wagner;

M) All yearbook information from Wagner's school yearbook bins;

N) All of Wagner's yearbook pricing information and past yearbook contracts, and

O) Any and all Wagner production orders.

If Defendants wish to claim that they do not have any of these items in their possession, they must do so under oath. Additionally, if any of the items listed above are not in Defendants' possession but any Defendant knows where they are, then the Defendant shall disclose the item's whereabouts.

(3) Defendants are compelled to immediately provide to Wagner the password to allow access to the e-mail address wagnerportraitgroup@gmail.com.

(4) Defendants are enjoined from using or disclosing any business information of Wagner or using or retaining any copies of documents of Wagner, including but not limited to the property and documents described in Paragraph (2) above.

(5) This Order shall remain in full force and effect until **1:30 p.m. on February 2, 2009**, at which time the parties shall appear before the undersigned District Judge for a hearing on Wagner's request for a preliminary injunction.

### D. Conclusion

For the reasons thoroughly explained above, the Court hereby **GRANTS IN PART AND DENIES IN PART** Wagner's motion for a temporary restraining order (Doc. 5). Upon entry of this Order, the prior preliminary temporary restraining order shall be **VACATED** (Doc. 27).

**IT IS SO ORDERED.**

**DATED this 15th day of January 2009, at 10:25 a.m.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**