IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAL WAGNER STUDIOS, INC., <br> d/b/a WAGNER PORTRAIT GROUP, <br><br> Plaintiff, <br><br> vs. <br><br> KRIS ELLIOTT, PAM ELLIOTT, <br> BRAD GUTIERREZ, <br> CINDY HARGRAVE, ROBERT BRAY, <br> PHIL WALKER, and <br> SHARON VANSAGHI, <br><br> Defendants. | Case No. 09-CV-0031-MJR |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction and Background

This matter comes before the Court on a motion filed by Herff Jones, an interested third party, seeking release of all exhibits presented in support of Plaintiff Hal Wagner Studios' motion for preliminary injunction (Doc. 49), along with Wagner's motion to seal certain exhibits by way of a protective order (Doc. 103). Though the allegations involved in this case have been thoroughly discussed in the Court's prior orders (*see* Docs. 32, 46 & 53), the gist of the allegations is as follows.

### 1. Underlying Allegations in Wagner's Complaint

Wagner is in the business of supplying photography services to local schools, including services related to the production of yearbooks. In 1994, Wagner purchased all of the assets of the Elliotts' school photography business, including the Elliott Territory. Kris and Pam

Elliott were then hired by Wagner to manage Wagner's business in Central and Southern Illinois. As part of his employment agreement, Kris Elliott agreed not to solicit schools in the Elliott Territory for a short duration after his termination. All other Defendants worked in various capacities under the Elliotts' direction. On December 31, 2008, all Defendants abruptly submitted letters of resignation without notice, effective on January 1, 2009, leaving only two employees in the Edwardsville office. The Elliotts and Defendant Vansaghi accepted positions with Wagner's competitor, Herff Jones.

Upon receipt of the resignations, Wagner's vice-president inspected the Edwardsville office and determined that a large number of business documents were missing. These included customer lists, pending contracts, photography schedules, over 100 production orders, notebooks containing notes about customer needs, and entire customer files. Additionally, electronic files, including photographic images from each school serviced by the Edwardsville office, appeared to have been recently deleted. Wagner claimed that these files and items are critical to its business, such that the office cannot function without them.

Actions taken by the Elliotts on their final days of employment raised Wagner's suspicions that they and the other employees who abruptly resigned were responsible for taking these items. Wagner analyzed its Printer Job Log from its corporate headquarters in St. Louis, Missouri and determined that the Elliotts spent the weeks prior to their resignations printing various business documents, which were then deleted. As a result, Wagner had to hire a company specializing in electronic data retrieval to obtain copies of the missing files, though not all files could be recovered.

Wagner soon learned that prior to their resignations, Kris and Pam Elliott sent

"Publisher CDs" to certain schools. These CDs contain all of the high resolution photographs taken by Wagner at those schools and are necessary to publish yearbooks. After joining Herff Jones, the Elliotts sent letters soliciting each school's business and indicated that they were coming to pick up the "Publisher CDs" so as to begin work on yearbooks (presumably converting the Wagner client into a Herff Jones customer).

The Court previously granted in part and denied in part Wagner's request for a TRO, ordering the Defendants to return hundreds of Hal Wagner's confidential business documents but refusing to enforce Kris Elliott's covenant not to compete at that time (Docs. 27 & 32). Thereafter, the Court held a three-day hearing on the motion for preliminary injunction (Docs. 41-43). At that hearing, Wagner presented hundreds of documents in support of their motion, including those documents that Defendants returned pursuant to the TRO. Ultimately, the Court granted the motion for preliminary injunction in all respects (Doc. 46; *see also* Doc. 53).

## 2. The Pending Motions

On February 17, 2009, Herff Jones, who employs the Elliots and Vansaghi, appeared as an interested third party and filed a motion seeking copies of all exhibits offered at the preliminary injunction hearing (Doc. 49). Wagner filed a response to the motion (Doc. 104) and simultaneously filed a motion for protective order (Doc. 103).

Herff Jones claims that it has a right to access the 86 exhibits presented at the preliminary injunction hearing (Docs. 49 & 50). Herff Jones claims that the documents cannot be protected under seal, because Wagner made no effort to maintain their secrecy during the course of the preliminary injunction hearing. Specifically, Herff Jones notes that portions of some exhibits were presented and discussed in open court, though not all of them were actually shown on the

courtroom monitors. Additionally, Herff Jones points out that Wagner made no effort to enter the exhibits under seal, nor did Wagner seek a protective order at that time.

Wagner states that it has no objection to the release of exhibits, with the exception of nine: Exhibits 3, 4, 5, 6, 7, 8, 11, 12, and 15. It claims that these documents contain confidential business information, many of which the Court ordered the Defendants to return in both the temporary restraining order and the preliminary injunction including: customer production forms (Exh. 3), customer lists (Exh. 4), documents including pricing and publication information (Exh. 5), production CDs containing photographic images taken at many schools (Exh. 6), and Wagner's photography schedule, which includes account information (Exh. 7). Wagner also objects to Herff Jones's request for a CD ROM containing data recovered from Wagner's computers after Defendants deleted the files upon their termination (Exh. 11), and actual copies of files that were recovered (Exhs. 12 & 15). Wagner argues that it would undermine the Court's TRO to release these documents, because the Court has already indicated that these are confidential business documents and prohibited the Defendants or anyone acting in concert with them from retaining copies.

Wagner also asks the Court to enter a protective order sealing these particular documents (Doc. 103). In its motion, Wagner states that these exhibits constitute confidential business documents. Wagner states that these documents were only provided to opposing counsel with the understanding that they would be used for purposes of preparing for and conducting depositions and hearings, and were not to be used for any competitive purpose. It should be noted that none of the actual Defendants in this case object to the motion for protective order.

The Court held a hearing on March 20, 2009, at which counsel for Wagner and Herff

Jones appeared (Doc. 108). The Court considers these motions simultaneously, and hereby **GRANTS** the motion for protective order (Doc. 103) and **GRANTS IN PART AND DENIES IN PART** the motion for release of exhibits (Doc. 49). In short, Herff Jones may access all exhibits except numbers 3, 4, 5, 6, 7, 8, 11, 12, and 15, which are placed under seal.[1]

### B. Analysis

As a preliminary matter, the Court notes that it employs a presumption of disclosure and non-secrecy, consistent with Supreme Court and Seventh Circuit precedent, because openness fosters public confidence in its judicial system and tends to negate the perception that decisions are made in secret, smoke-filled back rooms. *See Union Oil Co. of Calif. v. Leavell*, **220 F.3d 562, 568 (7th Cir. 2000) (citing** *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, **513 U.S. 18, 27–29 (1994)) ("What happens in the halls of government is presumptively public business. Judges deliberate in private but issue public decisions after public arguments based on public records. . . Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.").**

Indeed, the general public has an interest in documents presented to the Court, and the customary rule is that records and documents filed with the Clerk are open to public inspection. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-99(1978); *Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000). Nonetheless, the Seventh Circuit has specifically noted that "[s]ecrecy is fine at the discovery stage, before the material enters the judicial record." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002). However, this does not give

---

[1] In the course of the March 20th hearing, Herff Jones stated that it no longer seeks a copy of Exhibit 6, which contains photographic images taken by Wagner at various schools.

a party free reign to seal whatever it wants—though the public interest in the disclosure of documents is at its lowest during pretrial discovery, the public interest "can be overridden only if the [litigants' interest in privacy] predominate." ***Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 944–45 (7th Cir. 1999).**

In keeping with these general principles, **FEDERAL RULE OF CIVIL PROCEDURE 26(c)(1)(G)** provides that, upon a showing of good cause, the Court may enter a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." The party seeking to maintain document confidentiality has the burden of showing good cause.

While Wagner does not refer to the exhibits in dispute as "trade secrets," it clearly regards these documents as confidential commercial information. Nonetheless, consideration of the Illinois Trade Secrets Act is a helpful starting point. The Act defines a trade secret as

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

**765 ILCS 1065/2(d).** In addition to the terms of the Act itself, Illinois courts have traditionally considered six factors from the **RESTATEMENT (FIRST) OF TORTS § 757** in determining whether particular information constitutes a trade secret. ***Stenstrom Petroleum Servs. Group, Inc. v. Mesch*, 874 N.E.2d 959, 972 (Ill.App.Ct. 2007).** These factors include:

> (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which it is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and to the plaintiff's competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* **(citing *Liebert*, 827 N.E.2d 909, 921–22 (Ill.App.Ct. 2005)).**

The undersigned District Judge has extensively reviewed these documents at issue, both in camera and during the course of the preliminary injunction hearing, such that it would be an understatement to say the Court is familiar with their contents. As outlined above, they include customer lists, documents that explain Wagner's pricing architecture, Wagner's actual work product created for its clients, and other information that was stored on its computers.

These documents obviously constitute confidential commercial information, and in most cases probably involve trade secrets as well. It does not appear that the information in these files is known outside of Wagner's business, which is exactly why the Elliotts tried to take copies with them upon their resignations and why Herff Jones now seeks access to them. Additionally, in the course of the proceedings, Wagner has repeatedly explained why these documents are so important to its business. Because of the Elliotts' managerial independence at the Edwardsville, Illinois office, Wagner was not itself fully aware of which schools it had pending contracts with nor to what extent work remained incomplete.

Herff Jones's primary argument is that Wagner did not take sufficient steps to keep the information secret, since it presented them in open court during the preliminary injunction hearing and never sought to have the files admitted under seal. But the circumstances of the case

make it clear that Wagner has made substantial efforts to keep the information in these documents confidential. The most obvious of these efforts is the immediate commencement of this action seeking injunctive after the Defendants resigned. And during the hearing, the fact is that the documents were treated as confidential when they were referenced during court proceedings. The Court and law clerk assigned to the case were provided voluminous binders with the documents contained therein. Very few were shown on the courtroom monitors. The Court saw no reason to declare them sealed sua sponte since they were not accessible to anyone. But for all intents and purposes, the documents were treated as though they were sealed. Indeed, the Court estimates that the height of the exhibits, if stacked, would approach three to four feet.

Moreover, when these documents were discussed, the primary purpose was simply to verify the fact that Defendants did take them from Wagner's office upon their resignations and returned them pursuant to the TRO. The nature of the confidential information included therein was discussed only in general terms. The specific content of each was never discussed.

The Court also notes that Wagner's counsel was vigilant in its efforts to keep the documents private. Indeed, counsel for Herff Jones was present during the proceedings. At one point, Wagner became suspicious that Herff Jones's counsel was tape recording the hearing and brought its concern to the Court's attention. The Court addressed the issue with Herff Jones's counsel directly, and counsel assured the Court that he was not recording the proceedings. While the Court accepts Herff Jones's word as to this issue, this series of events further supports the Court's finding that Wagner made every effort to ensure that the documents in question remained confidential.

Wagner's counsel has also explained that in the course of discovery, he and counsel

for the Defendants agreed that these documents would remain private, would only be used to prepare for depositions and hearings, and would not be used for any competitive purpose. **Rule 26(c)** encourages such agreements, insofar as it directs the parties to "confer with other affected parties in an effort to resolve the dispute without court action." Obviously, Wagner has taken a variety of steps to keep this information secret.

The Court has already determined that the files in question are of paramount importance to Wagner's business and its ability to compete in the industry. In its orders granting temporary and preliminary injunctive relief, the Court found that the documents contain confidential business information, which its former employees (who also happen to be Herff Jones's current employees) have no right to possess. Accordingly, the Court directed the Defendants to return these documents, and provided that neither Defendants nor anyone acting in concert with them may retain copies. To permit Defendants' employer to now obtain what its agents could not would be inequitable, and would severely undermine the preliminary injunction.

The documents which Wagner asks the Court to seal are obviously confidential business records. They contain sensitive client information, which, if revealed, would place Wagner at a competitive disadvantage—especially with respect to its competitor, Herff Jones, who is seeking their disclosure. As a result, the Court finds that Wagner has made an adequate showing of good cause that the Court should seal these nine particular exhibits at this stage of the case.

The motion for protective order is therefore granted. However, Herff Jones is free to access the rest of the exhibits submitted by the parties during the preliminary injunction hearing.

### C. Conclusion

The Court **GRANTS** Wagner's motion for protective order (Doc. 103) and **GRANTS**

**IN PART AND DENIES IN PART** Herff Jones's motion for release of exhibits (Doc. 49). Exhibits 3, 4, 5, 6, 7, 8, 11, 12, and 15 shall be sealed at this time. Herff Jones may access all other exhibits submitted by the parties during the preliminary injunction hearing.

**IT IS SO ORDERED.**

**DATED this 30th day of March 2009.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**
